# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

**CHAQUITA BARNES**                                                                      **PLAINTIFF**

**V.**                                                              **NO. 4:16-CV-121-DMB-JMV**

**OMEGA LABORATORIES, INC.**                                         **DEFENDANT**

## OPINION AND ORDER

Before the Court is "Omega Laboratories, Inc.'s Rule 12(b)(6) Motion to Dismiss Plaintiff Chaquita Barnes's Original Complaint." Doc. #4. For the reasons below, the motion will be granted in part and denied in part.

### I
### Factual Allegations and Procedural History

During the spring 2016 semester, Chaquita Barnes was enrolled in the Medical Laboratory Technology Health Science Program at Mississippi Delta Community College ("MDCC"). Doc. #1 at ¶¶ 7, 8. On March 29, 2016, in accordance with MDCC's randomized drug screening policy, Barnes submitted a hair sample to be screened for drug use. *Id*. at ¶¶ 8–9. Barnes' hair sample was sent to Omega Laboratories, Inc. for testing. *Id.* at ¶ 9.

On or about April 4, 2016, Barnes' drug screening results returned "showing a positive result for large amounts of Cocaine." *Id*. at ¶ 11; Doc. #1-1. As a result, on April 7, 2016, MDCC informed Barnes that "she would be dismissed from the program." Doc. #1 at ¶ 12. The same day, Barnes, who had never used illegal drugs,[1] went to the Greenville Family Medical Clinic and obtained a second hair follicle test from LabCorp, Inc. *Id*. at ¶¶ 11, 13. The results from this second drug screening returned negative for all tested drugs, including cocaine. *Id*. at ¶

---

[1] Barnes alleges that she was tested for drugs on a regular basis for the past five years through the United States Air Force and the Air National Guard, and that no test ever returned positive. Doc. #1 at ¶ 16.

14; Doc. #1-2.

Barnes notified the Vice President of Student Services at MDCC of the negative results and asked to be retested but her request was denied. Doc. #1 at ¶ 17. Barnes appealed her dismissal from MDCC but the dismissal was upheld. *Id.* at ¶¶ 17–18; Doc. #1-3. Due to her dismissal, Barnes did not receive credit for the spring 2016 semester and was not reimbursed for fees and tuition paid. Doc. #1 at ¶ 20. To reapply for admission into the program, Barnes must "undergo a 10-week drug rehabilitation program at her own expense, even though she has never taken or used any illegal drugs." *Id.* at ¶ 19.

On June 13, 2016, Barnes filed a complaint in this Court against Omega, alleging causes of action for negligence, and "defamation and slander." Doc. #1. Barnes seeks "to recover the full amount of monetary damages under Mississippi law," including damages for past and future mental anguish and loss of enjoyment of life. *Id.* at ¶ 29. On August 1, 2016, Omega filed a motion to dismiss Barnes' complaint under Federal Rule of Civil Procedure 12(b)(6). Doc. #4. On August 15, 2016, Barnes responded in opposition to the motion to dismiss, Doc. #14; and Omega replied on August 22, 2016, Doc. #19.

## II
## Standard

"The pleading standards for a Rule 12(b)(6) motion to dismiss are derived from Rule 8 of the Federal Rules of Civil Procedure, which provides, in relevant part, that a pleading stating a claim for relief must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012). Under Rule 12(b)(6), "[t]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Taylor v. Shreveport*, 798 F.3d 276, 279 (5th Cir. 2015) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). Under this

standard, a court must "accept all well-pleaded facts as true." *New Orleans City v. Ambac Assurance Corp.*, 815 F.3d 196, 199–200 (5th Cir. 2016) (internal quotation mark omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do so." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Rather,

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 544) (internal citations omitted).

### III
### Discussion

Omega has moved to dismiss Barnes' claims for negligence and "defamation and slander."

#### A. Negligence

In order to state a claim for negligence under Mississippi law, a plaintiff must allege the following elements: "(a) duty or standard of care, (b) breach of that duty or standard, (c) proximate causation, and (d) damages or injury." *Arnona v. Smith*, 749 So.2d 63, 66 (Miss. 1999).

In her complaint, Barnes alleges that Omega owed her a duty "to exercise reasonable care in the performance of an accurate hair drug screening and to accurately report the results to MDCC." Doc. #1 at ¶ 21. She contends Omega breached this duty when it conducted the hair

3

drug screening in a manner "that left room for erroneous results, including, but not limited to the failure to complete and provide chain-of-custody documentation;" reported to MDCC incorrect hair drug screening results; failed to advise her and MDCC "of the risk of obtaining a false positive result for any number of reasons; and … all other acts of negligence as will be shown at trial." *Id*. at ¶ 22.

In its motion to dismiss, Omega contends that (1) it "does not owe Barnes a duty to inform her or Mississippi Delta Community College of all possible reasons for her cocaine-positive drug test result;" (2) it "did not collect the hair specimen at issue, nor control the third-party that collected [the] hair specimen;" and (3) "her negligence claims are barred by the economic loss doctrine." Doc. #4 at 1.

### 1. Alternative explanations

Omega contends that the alleged duty to Barnes to inform her and MDCC of the risk of a false positive in her cocaine positive result is "impermissibly broad" and "would require Omega to inform each of its customers and testing donors of not only alternative explanations for a cocaine positive test result, but of all possible causes of any positive drug test result." Doc. #5 at 4. It further contends that "[t]here is no precedent for the imposition of such a broad, undefined duty under Mississippi law." *Id*. In support, Barnes cites cases from other jurisdictions holding that a laboratory does not owe a duty to an employee to inform the employer of all possible causes of a positive alcohol or drug test result.[2] *Id*. at 5–7.

Barnes fails to defend against the argument that Omega owed her no duty to inform her or MDCC of alternative explanations for her cocaine-positive drug screening. Accordingly,

---

[2] *See Cooper v. Lab. Corp. of Am. Holdings*, 181 F.R.D. 312, 322 (D.S.C. 1997) ("LCAH had no duty to Plaintiff to inform Esab of alternate reasons for the positive results. It was Esab's responsibility to educate itself regarding other reasons for the positive results, particularly after Plaintiff informed Esab that she did not consume alcohol."); *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 354 (Tex. 1995) ("SmithKline had no duty to disclose to either [employee or employer] any information about the effect of eating poppy seeds on a positive drug test result.").

4

Barnes's negligence claim is abandoned to the extent it is premised on the allegation that Omega failed "to advise [her] and MDCC of the risk of obtaining a false positive result for any number of reasons." *See U.S. ex rel Woods v. SouthernCare, Inc.*, No. 3:09-cv-313, 2013 WL 1339375 at *7 (S.D. Miss. Mar. 30, 2013) ("The Relators did not adequately brief their opposition to the Defendant's Motion to Dismiss Count Three on state law claims of fraud, suppression, and deceit. As such, they have abandoned Count Three.") (collecting cases).

### 2. Chain of custody documentation

Barnes alleges that Omega breached its duty when it "fail[ed] to complete and provide chain-of-custody documentation." Doc. #1 at ¶ 22.a. Omega argues that because it did not collect the hair specimen, it owed Barnes no duty regarding the collection of the hair specimen by third-parties.[3] Doc. #5 at 8. In support of its argument, Omega cites cases holding that there is no duty to control the conduct of a third party.[4] *Id*. However, Barnes fails to address these arguments in her response. As such, her negligence claim is abandoned to the extent it is premised on the chain-of-custody allegation. *Woods*, 2013 WL 1339375 at *7.

### 3. Incorrect results

Omega argues that "to the extent that Barnes alleges that [it] negligently tested her hair specimen and reported 'incorrect hair drug screening results,' … Barnes's claim is barred by the economic-loss doctrine." Doc. #5 at 8. Omega contends that Barnes' "only alleged injuries are

---

[3] Omega notes that Barnes does not allege that Omega collected the hair specimen.

[4] *See Permenter v. Milner Chevrolet Co.*, 91 So.2d 243, 248 (Miss. 1956) (stating in car accident case, "Ordinarily, however, in the absence of a special relationship between the parties, there is no duty to control the conduct of a third person so as to prevent him from causing harm to another."); *Tanks v. NEAS, Inc.*, 519 F. Supp. 2d 645, 653 (S.D. Miss. 2007) (noting under Mississippi law that generally "there is 'no duty to control the conduct of another in order to protect a third person from harm,' … [except for] a special relationship … which imposes a duty upon one to control the actions of another,' 'where a special relationship gives a third person a right to protection.'") (quoting *Peck v. Counseling Serv. of Addison Cty., Inc.*, 499 A.2d 422, 425 (Vt. 1985)); *Santiago v. Greyhound Lines, Inc.*, 956 F. Supp. 144, 154 (N.D.N.Y. 1997) ("Santiago alleges that LSI was negligent in not providing Dr. Belmonte a procedural guide on how to collect urine samples…. No authorities have been … located … that would support such a profound extension of the elementary duty to test the sample according to the applicable standards of due care.").

the loss of tuition and dismissal from MDCC's Medical Laboratory Health Science Program." *Id*. at 8–9. In making this argument, Omega maintains that Barnes' "conclusory allegations of mental anguish or emotional distress are insufficient to prevent the application of the economic loss doctrine." *Id*. at n.6.

In response, Barnes argues that Mississippi does not recognize the economic loss doctrine outside of the context of products liability cases; that Omega "disregards the fact that [her] complaint includes a claim for damages resulting from her past and future mental anguish and the loss of enjoyment of life;" and that the issue before the Court on a 12(b)(6) motion is not her proof of damages but "whether she has adequately plead facts that would entitle her to relief." Doc. #15 at 14, 16–17. In reply, Omega reiterates its argument that the economic loss doctrine applies[5] and also argues that "Barnes's mere allegation of embarrassment, humiliation, and mental anguish are not sufficient to allege an injury cognizable in a negligent infliction of emotional distress claim."[6] Doc. #19 at 4 & n.2.

### a. Economic Loss Doctrine

The economic loss doctrine is a rule "restricting recovery in products liability to damages for physical harm, thereby excluding recovery for purely economic damages." *Ga. Flight of Del., Inc. v. Gulfport Aviation Partners, LLC*, No. 1:16-cv-97, 2016 WL 3034331, at *2 (S.D. Miss. May 27, 2016) (quoting *Lyndon Prop. Ins. Co. v. Duke Levy & Assocs., LLC*, 475 F.3d 268, 274 (5th Cir. 2007)). "There is 'no Mississippi caselaw applying this doctrine outside of the

---

[5] Omega contends that "[i]n response to Omega's argument that her remaining theory of negligence is barred by the economic loss doctrine, Barnes argues that Omega owed her a duty of reasonable care in the testing of her hair specimen regardless of privity of contract." Doc. #19 at 4. However, the contention is incorrect. Barnes' arguments regarding duty of reasonable care were not made in relation to Omega's economic loss doctrine defense. Omega acknowledges such when it cites the portion of the response which it contends addresses the economic loss doctrine, which also addresses other jurisdictions' holdings that a duty of reasonable care does exist.

[6] Barnes does not expressly assert a claim for negligent infliction of emotional distress. However, Omega contends that "Barnes appears to cast her negligence claim as—or akin to—a claim for negligence infliction of emotional distress …." Doc. #19 at 4.

realm of products liability.'"[7] *Id.* (quoting *Lyndon Prop.*, 475 F.3d at 274). Therefore, this Court declines to apply the economic loss doctrine to this case. *See Walker v. Williamson*, 131 F. Supp. 3d 580, 594–95 (S.D. Miss. 2015) (citing *Lyndon Prop.*, 475 F.3d at 274) ("Because Mississippi courts do not apply [the economic loss doctrine] rule in anything but products liability cases and the Mississippi Supreme Court has given no clear indication of adopting it in other cases, this Court must decline to apply the rule as well.").

*b. Damages*

Regarding her negligence claim, Barnes alleges that "[a]s a direct and proximate result of Defendant's … acts of negligence, Plaintiff suffered substantial harm, including, but not limited to, dismissal from school only months before graduation, severe mental anguish and emotional distress, embarrassment, humiliation, and she will continue to suffer harm and damages as set forth and prayed for below."[8] Doc. #1 at ¶ 23. Set forth below, in the damages section of her complaint, Barnes alleges that "[a]s a direct and proximate result" of Omega's negligence, she is "entitled to recover the full amount of monetary damages under Mississippi law to include … [p]ast and future mental anguish … and … [t]he loss of enjoyment of life." *Id.* at ¶ 29. Finally, in the complaint's prayer for relief, Barnes demands a judgment against Omega "in an amount in excess of the jurisdictional minimum of this Court, for all costs of this action, pre-judgment and post-judgment interest and for all other relief deemed proper." *Id.* at 6. These allegations, considered together at this stage, are sufficient to allege the damages element of Barnes'

---

[7] "In this diversity case, [the Court] seek[s] to apply the law of Mississippi as [it] believe[s] the Supreme Court of Mississippi would." *Lyndon Prop.*, 475 F.3d at 274.

[8] Barnes argues in her response to the motion to dismiss that the alleged mental anguish emotional distress, embarrassment, and humiliation were a foreseeable consequence of Omega's negligent conduct. Doc. #15 at 13–14, 16–17.

7

negligence claim.[9]

## B. Defamation and Slander

"Defamation is that which tends to injure reputation[] in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him." *Speed v. Scott*, 787 So.2d 626, 631 (Miss. 2001) (internal quotation marks omitted). Under Mississippi law, in order to establish a defamation claim there must be "a false and defamatory statement concerning the plaintiff, an unprivileged publication to a third party, fault amounting at least to negligence on the part of the publisher, and either actionability of the statement irrespective of special harm or existence of some special harm caused by publication."[10] *Eselin-Bullock & Assocs. Ins. Agency, Inc. v. Nat'l Gen. Ins. Co.*, 604 So.2d 236, 241 (Miss. 1992).

"When analyzing defamation claims, Mississippi courts employ a bifurcated process." *Eckman v. Cooper Tire & Rubber Co.*, 893 So.2d 1049, 1052 (Miss. 2005). "First, the Court must determine whether the occasion called for a qualified privilege. If a qualified privilege does exist, the Court must then determine whether the privilege is overcome by malice, bad faith, or abuse." *Id*. Qualified privilege covers "[a] communication made in good faith and on a subject matter in which the person making it has an interest, or in reference to which he has a duty, … if made to a person or persons having a corresponding interest or duty, even though it contains matter which without this privilege would be slanderous." *Barmada v. Pridjian*, 989 So.2d 359,

---

[9] In arguing that Barnes' "only alleged injuries are the loss of tuition and dismissal from MDCC's Medical Laboratory Health Science Program," Omega acknowledges that Barnes has alleged damages beyond those related to emotional distress. Doc. #5 at 8–9. While Omega has also challenged the sufficiency of Barnes' allegations of emotional distress damages, such need not be analyzed at this time given the Court's finding that Barnes has alleged enough to state a negligence claim and given the Court's ruling below that Barnes will be given the opportunity to amend her complaint.

[10] Slander is the oral form of defamation and requires that the same elements be established. *Speed*, 787 So.2d at 631.

362 (Miss. 2008).

Barnes alleges in her complaint that the positive drug test results showing that she had ingested large amounts of cocaine were false and that this false information "has been disclosed to individuals other than those designated to receive such information … including, but not limited to, individuals on the MDCC administrative staff and/or [Barnes'] MDCC classmates." Doc. #1 at ¶ 25. Barnes also alleges that as a result of the disclosure of this false information, she "has suffered humiliation and both her personal life and reputation have endured great harm as a result." *Id*. at ¶ 26.

Omega argues that Barnes' defamation claim fails as a matter of law because it had a legitimate and direct interest in reporting its laboratory testing results to MDCC; therefore, it was protected by qualified privilege. Doc. #5 at 12. Omega also points out that Barnes fails to identify the party that improperly disclosed the positive drug test result to MDCC's administrative staff and her classmates. *Id*. In her response, Barnes fails to address Omega's defense that she failed to identify the party responsible for the allegedly improper disclosure.

Omega is correct that, although Barnes alleges that the false positive result has been published to MDCC administrative staff and/or her MDCC classmates, she does not allege that Omega was the publisher of this information. As pointed out by Omega, Barnes fails to identify who improperly disclosed the positive drug tests results to MDCC administrative staff and/or her classmates. In order to establish a claim for defamation, a person must show that the "unprivileged publication" to a third party was the fault, amounting at least to negligence, of the publisher. Barnes has not alleged that Omega was the publisher of the allegedly false information; therefore, her claims for defamation and slander must be dismissed as a matter of law.

# IV
## Leave to Amend

When a court dismisses a complaint based on pleading deficiencies, it is generally appropriate to provide the plaintiff an opportunity to remedy the pleading deficiencies through the filing of an amended complaint. *Moore v. Mississippi Gaming Comm'n*, No. 1:15-CV-00013, 2015 WL 13019615, at *6 (N.D. Miss. Nov. 2, 2015) (citations omitted). The Court concludes that such relief is warranted here. Barnes will be given an opportunity to correct the pleading deficiencies identified in this order such that dismissal will be without prejudice to the filing of an amended complaint.

# V
## Conclusion

For the reasons above, Omega's motion to dismiss [4] is **GRANTED in Part and DENIED in Part**. The motion is GRANTED with respect to Barnes' claims for defamation and slander, and to the extent her negligence claim is based on chain of custody documentation and failure to inform of the risk of false positives. The motion is DENIED to the extent her negligence claim is based on inaccurate results and the reporting of inaccurate results. The dismissed claims are dismissed without prejudice to the filing of an amended complaint within twenty-one (21) days of this order.

**SO ORDERED**, this 24th day of March, 2017.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**